IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ERIC V. MITCHEL II, )<br>    Plaintiff, )<br> )<br>    v. )<br> )<br>STELLANTIS FINANCIAL SERVICES, )<br>INC., *et al.*, )<br>    Defendants. )<br> ) | Civil Action No. 3:24CV882 (RCY) |

**<u>MEMORANDUM OPINION</u>**

*Pro se* Plaintiff Eric V. Mitchel II ("Plaintiff" or "Mr. Mitchel") brings this unlawful repossession action against Defendants Stellantis Financial Services, Inc. ("Stellantis"), Richard Epps, P.C. ("Epps"), and Phil Rubin,[1] Esq. ("Rubin," collectively "Defendants"). This case is before the Court on Defendants' Joint Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 8. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, Defendants' Joint Motion to Dismiss will be granted.

---

[1] Defendants point out in their Joint Brief in Support of Motion to Dismiss that Plaintiff's Complaint misspells Mr. Rubin's name as "Ruben." Br. Supp. 1 n.1, ECF No. 9. As Mr. Rubin's legal name is "Rubin" and not "Ruben," the Court will employ the correct spelling throughout.

## I. FACTUAL ALLEGATIONS[2]

Prior to August 2023, Plaintiff purchased a 2022 Toyota Tundra, with financing provided by Defendant Stellantis. *See* Compl. ¶¶ 4, 14; Compl. Ex. B at 44–45, ECF No. 1-2; Compl. Ex. E at 67–68, ECF No. 1. In 2022, Plaintiff received a 1099-A,[3] Acquisition or Abandonment of Secured Property, from Defendant Stellantis, and also received a 1099-C,[4] Cancellation of Debt, for calendar year 2023 from Defendant Stellantis. Compl. Ex. E at 67–68. In January 2024, Plaintiff reported that he was the victim of fraud, which involved an individual impersonating a tow company. Compl. ¶ 14. As a result of this alleged fraudulent incident, Plaintiff informed Defendant Stellantis that he was experiencing financial challenges. *Id.* ¶ 14. Thereafter, Defendant Epps filed a civil action in Hopewell Circuit Court, on behalf of Defendant Stellantis, against Mr. Mitchel for defaulting on his loan. *See* Compl. ¶¶ 13–14, 18.

On February 26, 2024, and again on June 20, 2024, Mr. Mitchel moved to dismiss Defendant Stellantis's state court complaint for improper venue. *Id.* ¶¶ 21–22. On July 19, 2024, the Hopewell Circuit Court denied Mr. Mitchel's motion and stayed the court proceedings until

---

[2] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] "Form 1099–A is filed when a creditor who 'lends money secured by property' acquires an interest in the security 'in full or partial satisfaction' of the debt, or the creditor 'has reason to know' that the security 'has been abandoned.'" *David v. Summit Community Bank*, 2015 WL 12516770, at *1 (E.D. Va. June 15, 2015) (citing 26 U.S.C. § 6050J(a)).

[4] "The IRS . . . treats the Form 1099–C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt." *F.D.I.C. v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013).

September 19, 2024. *Id.* ¶¶ 22; Compl. Ex. B at 45. The stay was issued to allow Mr. Mitchel to choose an arbitration organization pursuant to the arbitration provision contained within the retail installment contract dated August 18, 2023. Compl. Ex. B at 45. In the event Mr. Mitchel properly commenced arbitration proceedings, the Hopewell Circuit Court would extend the stay by 180 days. *Id.*

On September 12, 2024, Mr. Mitchel initiated arbitration against Defendant Stellantis. Compl. Ex. B at 47–53. Later, on October 9, 2024, Defendant Stellantis repossessed Plaintiff's vehicle. Compl. ¶ 16. The next day on October 10, 2025, Plaintiff sent a negotiable instrument to Defendant Stellantis "to settle the account," to which Defendants did not respond. *Id.* ¶ 18. That same day Plaintiff filed an Emergency Motion for a Temporary Restraining Order (TRO) with the Hopewell Circuit Court to prevent Defendants from selling Mr. Mitchel's vehicle. *Id.* ¶ 24–25. It does not appear that the Hopewell Circuit Court ruled on the matter or held a hearing, however, on November 1, 2024, the Hopewell Circuit Court granted Defendant Stellantis's Motion for Entry of Nonsuit, dismissing Defendant Stellantis's case against Mr. Mitchel in its entirety. *Id.* ¶¶ 24–26; *see generally id.*

Following the dismissal of the Hopewell Circuit Court action brought by Defendants against Mr. Mitchel, Mr. Mitchel filed this instant action.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on November 13, 2024, in the Circuit Court of Prince George County. Not. Removal Ex. A at 4–20[5] [hereinafter Compl.], ECF No. 1. On December 11, 2024, Defendants Stellantis and Rubin removed this case to federal court pursuant to 28 U.S.C.

---

[5] Plaintiff's original Complaint, along with service materials, are collectively filed at ECF No. 1–2. For ease of reference, the Court provides pincites for appropriate document locations within this omnibus filing. For this and other filings, the Court uses the pagination assigned by the CM/ECF system, and not any conflicting pagination appearing on the originally filed document(s).

3

§ 1441(a), based on Plaintiff's Fair Debt Collection Practices Act claim. Not. Removal 1, ECF No. 1. On December 18, 2024, Defendants filed a Joint Motion to Dismiss, Mot. Dismiss, ECF No. 8, and Brief in Support thereof. Br. Supp., ECF No. 9. Plaintiff filed his opposition to said motion on December 27, 2024, Resp. Opp'n, ECF No. 11, and Defendants filed their Reply on January 2, 2025. Reply, ECF No. 13.

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Notably here, a *pro se* complaint is "to be liberally construed"[6] and, "however

---

[6] The Court notes that *Erickson*'s liberal-construction requirement for *pro se* pleadings predates the advent of artificial intelligence ("AI") drafting tools, which are being used with increasing prevalence by *pro se* parties. *See*

4

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023). "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Iqbal*, 556 U.S. 662, 678.

## IV. DISCUSSION

Plaintiff brings the following nine claims predicated on the alleged wrongful repossession of Plaintiff's vehicle. Compl. ¶¶ 43–79. Of the claims brought by Plaintiff, only one claim is based on federal law. *See id.* Plaintiff brings claims against Defendants for wrongful repossession

---

*Powhatan Cnty. Sch. Bd. v. Skinger*, 2025 U.S. Dist. LEXIS 104564, at *19–24 (E.D. Va. June 2, 2025) (collecting cases to illustrate the growing issue and accompanying concerns). Such tools both increase *pro se* litigants' ability to draft voluminous pleadings and increase the odds that such pleadings contain fractured assertions and "hallucinated" legal propositions, which courts must wade through in construing claims. *Id*. While its analysis does not ultimately turn on this point, the Court notes that many if not all of Plaintiff's legal citations are inaccurate, suggesting to the Court that Plaintiff used AI to draft some, if not all, of Plaintiff's pleadings in this case.

For example, Plaintiff cites to *Smith v. Stellantis Financial Services, Inc.*, Case No. 3:18-cv-00512 (E.D. Va. 2018), Compl. ¶ 29, however, the case number is actually for a § 1983 Bivens action in the case of *Miller v. General District Court of the City of Richmond*. In fact, every citation listed under Plaintiff's sub-heading "VII. Established Pattern of Unfair Practices by Stellantis" appears to be incorrect or fabricated. *Compare* Compl. ¶ 32 (listing *Garcia v. Stellantis Fin. Servs.*, 4:21-cv-00354 (W.D. Tex. 2021), which yielded no Westlaw results), *with Franklin v. Apple Inc.*, 569 F. Supp. 3d 465 (W.D. Tex. 2021) (the actual W.D. Tex. 2021 case with case number 4:21-cv-354, which is an antitrust case).

The Court respectfully proposes that the time may be near for an exception to the *Erickson* liberal-construction rule, where a *pro se* individual relies on AI to draft pleadings and thus blurs the line between what is a good faith *pro se* assertion of an actionable claim and what is a computer-generated morass that only serves to waste court time and resources.

5

and violation of arbitration stay (Count I), breach of contract and arbitration agreement (Count II), negligence and bad faith by Defendant Epps (Count III), violation of Virginia's Consumer Protection Act ("VCPA," Count IV), improper action on charged-off account (Count V), intentional infliction of emotional distress (Count VI), failure to provide adequate notice of repossession (Count VII), violation of the Fair Debt Collection Practices Act ("FDCPA," Count VIII), and repeated violations of consumer protection laws (Count IX). *Id.*

In support of the instant Motion to Dismiss, Defendants largely argue that Plaintiff fails to state a claim under many of the aforementioned counts because Defendant Stellantis lawfully repossessed Plaintiff's vehicle after Plaintiff defaulted. *See* Br. Supp. 7–17. Defendants also highlight that aside from Count III, there are no specific allegations brought against Defendant Epps, and that there are no specific allegations brought against Defendant Rubin at all. *Id.* at 3 n.3; *see generally* Compl. Plaintiff disagrees and generally argues that Defendants unlawfully repossessed his vehicle, in violation of the arbitration stay resulting in the aforementioned violations. *See* Resp. Opp'n 14–17.

The Court will begin its analysis with the sole federal claim raised by Plaintiff, Defendants' alleged violation of the FDCPA (Count VIII). Should the Court find that Plaintiff fails to state a federal claim, the Court will then determine whether to exercise supplemental jurisdiction over the remaining state law claims.

**A. Plaintiff Fails to State a Claim Under the Federal Debt Collection Practices Act Against Defendants**

Defendants argue that Defendant Stellantis did not violate the FDCPA because it had a present right to dispossess Plaintiff of his vehicle because Plaintiff was in default. Br. Supp. 16.

The purpose of the FDCPA is to curtail "the abusive, deceptive, and unfair debt collection practices by many debt collectors. 15 U.S.C. § 1692(a). To recover under the FDCPA, a plaintiff

6

must show: "(1) that []he has been the object of collection activity arising from consumer debt, (2) that the defendant is a debt collector, as defined under the FDCPA, and (3) that the defendant has engaged in a prohibited act or omission." *Shelton v. Marshall*, 724 F. Supp. 3d 532, 541 (W.D. Va. 2024) (quoting *Wynne v. I.C. Sys., Inc.*, 124 F. Supp. 3d 734, 741 (E.D. Va. 2015)). The FDCPA provides a non-exhaustive list of acts that violate the statute. *See* 15 U.S.C. § 1692f.

In particular, a debt collector may not "[t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Id.* § 1692f(6)(A). Put differently, "a repossession without judicial process violates § 1692f(6)(A) *unless* the property is collateral under an enforceable security interest *and* the repossessor has a 'present right to possession' of the property." *Richards v. PAR, Inc.*, 954 F.3d 965, 968 (7th Cir. 2020). Whether a debt collector has a "present right to possession" is a matter of state law. *Id.* at 966; *see also Shue v. JMAC Distrib., LLC,* 745 F. Supp. 3d 3, 6 (D. Mass. 2024) (noting that "[r]epossession rights are governed by the relevant state's property and contract law" because the FDCPA does not define what it means to have a "present right to possession" (first quoting *Neathery v. Lucky 13 Recovery Inc.*, 2023 WL 7924149, at *3 (D. Mass. Nov. 16, 2023); and then *Richards*, 954 F.3d at 968)).

Defendants argue that while the FDCPA prohibits deceptive or unfair practices, as outlined in 15 U.S.C. §§ 1692e, 1692f, Defendant Stellantis's actions do not constitute deceptive or an unfair practice. Br. Supp. 16. Defendants argue that the FDCPA does not prohibit dispossession when creditors have a present right to repossess the vehicle, which Defendant Stellantis did under Va Code Ann. § 8.9A-609. *Id.* at 16–17; Reply 5–6, 13. Defendants rebuff Plaintiff's contention that the stay in state court prevented Defendant Stellantis from repossessing Plaintiff's vehicle

7

because § 8.9A-609 explicitly allows repossession of secured collateral, after a default, through judicial or non-judicial processes. Reply 5, 13. Defendants also disclaim Plaintiff's negotiable instrument, and in doing so assert that it had no impact on Defendant Stellantis's ability to repossess Plaintiff's vehicle under § 8.9A-609. *See* Br. Supp. 17 n.13.

Plaintiff disagrees with Defendants' contention that they had a present right to possess Plaintiff's vehicle in light of the stay in state court. Resp. Opp'n 16. Plaintiff argues that Defendant Stellantis's repossession in "defiance of an arbitration stay and statutory notice requirements[7] is inherently unlawful." *Id.* at 17.

Neither party disputes the first two elements of a FDCPA claim. *See generally* Br. Supp.; Resp. Opp'n; Reply. The briefing of both parties reflects their mutual understanding that Mr. Mitchel has been the object of collection activity (namely, repossession) arising from debt he took on to finance the purchase of a vehicle. *See id.* Defendant Stellantis, which extended financing services to Mr. Mitchel, has acted as a debt collector in its efforts to recoup collateral upon Mr. Mitchel's default. Br. Supp. at 2; Resp. Opp'n at 10 (alleging Defendants' violation of industry standards for fair debt collection practices).

Although Plaintiff does not explicitly state that he defaulted, his Complaint—even when construed in the light most favorable to him—demonstrates that he was in default at the time his vehicle was repossessed based on Plaintiff's own assertion that his account was "charged-off." *See* Compl. ¶¶ 14, 17; *see Cashion*, 720 F.3d at 179 ("The IRS . . . treats the Form 1099–C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of

---

[7] To the extent Plaintiff seeks to amend his Complaint by way of briefing to add an additional FDCPA claim beyond the scope of his Complaint, regarding notice, *see* Compl. ¶¶ 68–73, he is barred from doing so via briefing. *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

debt or preventing a creditor from seeking payment on a debt."); *Grayson v. Westwood Buildings L.P.*, 859 S.E.2d 651, 678 (Va. 2021) ("A 'charge-off' associated with a Form 1099-C is merely an accounting entry that does not affect the legal obligation to pay the debt or evidence an intent to discharge the debt." (quoting 4 William D. Hawkland et al., *Uniform Commercial Code Series* § 3-604:1 n.1 (2020)); *Nicholas v. Synchrony Bank*, 2023 WL 2474216, at *2 n.4 (W.D. Va. Mar. 13, 2023) (same)). Therefore, the only remaining issue is whether Defendants engaged in a "prohibited act or omission," that is whether Defendants had a present right to possess the vehicle. *See Shelton*, 724 F. Supp. 3d at 541. In this matter, the Court agrees with Defendants that Plaintiff failed to state a FDCPA claim because Defendants did not engage in a prohibited act when they seized Plaintiff's vehicle.

The Court will first examine whether Defendant Stellantis' actions constituted a "prohibited act or omission" under Virginia State law. Should the Court find that Defendant Stellantis had a present right to repossess the vehicle, it will then assess whether that present right to possession is voided by concurrent judicial proceedings. Lastly, the Court will determine whether Plaintiff's "negotiable instrument" affected Defendant Stellantis' rights.

1. Under Virginia State Law a "Present Right to Possession" Includes The Right To Repossess Collateral So Long As Reposession Proceeds Without A Breach of the Peace

"Under the Uniform Commercial Code of Virginia, upon default a secured party may 'take possession of the collateral . . . if it proceeds without breach of the peace.'" *Vivos Acquisitions, LLC v. Health Care Res. Network, LLC*, 2022 WL 995389, at *6 (E.D. Va. Mar. 31, 2022) (quoting Va. Code Ann. § 8.9A-609); Va. Code Ann. § 8.9A-609 ("After default, a secured party . . . may take possession of the collateral; and . . . . A secured party may [take possession of the collateral] . . . pursuant to judicial process; or . . . without judicial process, if it proceeds without breach of the peace."); *Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915, 920 (W.D. Va. 2016) ("[T]he

9

Virginia Code . . . clearly states that self-help repossession can only proceed 'without judicial process, if it proceeds without breach of the peace.'" (first citing Va. Code Ann. § 8.9A-609; and then *Universal Credit Co. v. Taylor*, 180 S.E. 277 (Va. 1935)).

There is a general consensus among district courts, including Virginia district courts, that a breach of the peace involves "force, violence, threats or fraud to obtain control" over property. *Mahdavi v. NextGear Capital, Inc.*, 2015 WL 1526538, at *4 (E.D. Va. Apr. 3, 2015) (citing *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1232–33 (W.D. Va. 1990) (noting that "no Virginia cases precisely delineat[e] these rules . . . [but] [t]he right to possession of chattels may be exercised without recourse to the courts, provided this can be done peaceably")); *see also Shue*, 745 F. Supp. 3d at 7–8 (comparing cases involving oral objections, which do not constitute a breach of the peace, with vehicles being towed while plaintiff is in the vehicle, which does constitute a breach of the peace); *McCarthy v. First Credit Res., Inc.*, 702 F. Supp. 3d 366, 369 (W.D. Pa. 2023) ("Although their findings vary, courts consistently look to the following factors to determine if there was a breach of the peace: the use of law enforcement; violence or threats of violence; trespass; verbal confrontation; and disturbance to third parties." (quoting *Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 279 (E.D. Pa. 2016)).

A breach of the peace refers to conduct at or near the time of the seizure of property. *Wallace*, 743 F. Supp. at 1233. "[A]lmost all jurisdictions [have held] that the use of stealth in a self-help repossession is not a breach of the peace." *Id.* Virginia is one such jurisdiction. *See Press v. Purks*, 1997 WL 823549, at *1–2 (Va. Cir. Ct. 1997) (creditor's repossession of horse, without debtor's knowledge, from farm where debtor boarded the horse was proper and "without breach of the peace"). Likewise, courts have held that repossession of "movable collateral" from a public place or from property owned by a third party cannot constitute a breach of the peace

10

because the "debtor's real property interest is not invaded." *Wallace*, 743 F. Supp. at 1233 (citing Eugene Mikolajczyk, *Breach of Peace and Section 9-503 of the Uniform Commercial Code—A Modern Definition for an Ancient Restriction*, 82 Dick. L. Rev. 351, 362 (1997-1998)).

As an initial matter, Plaintiff has not sufficiently alleged a FDCPA claim because Plaintiff has not disputed that Defendants were authorized to dispossess Plaintiff of his vehicle based on his default. Plaintiff also alleges no facts that Defendants breached the peace when seizing Plaintiff's vehicle. Compl. ¶¶ 14, 16; *see generally* Compl. Plaintiff merely states that Defendants repossessed his vehicle but does not suggest that Defendants used "force, violence, threats or fraud to obtain control" at the time they seized the vehicle. *Mahdavi*, 2015 WL 1526538, at *4; *see Wallace*, 743 F. Supp. at 1233 (noting a breach of the peace refers to conduct at or near the time the property was seized). Indeed, it is not clear, even viewing in the light more favorable to him, that Plaintiff even possessed the vehicle at the time Defendants repossessed the vehicle. *See* Compl. ¶ 14 (noting that Plaintiff had filed a police report regarding an individual impersonating a towing company).

### 2.  Defendant Stellantis Was Not Prohibited From Repossessing Plaintiff's Vehicle Despite Ongoing Judicial Proceedings

Defendants argue that there was nothing to stop Defendant Stellantis from pursuing a judicial and nonjudicial remedy simultaneously. Br. Supp. 5, 13.

Indeed, there is nothing preventing Defendants from pursuing repossession pursuant to judicial process (i.e. via a lawsuit) or without judicial process (i.e. repossessing the vehicle using self-help methods), *see Phillips v. Ball & Hunt Enters.*, 933 F. Supp. 1290, 1299 (W.D. Va. 1996) ("Courts that have considered this issue overwhelmingly agree that a secured party may pursue more than one remedy.") (collecting cases), or pursuing those remedies simultaneously. *See Glamorgan Coal Corp. v. Bowen*, 742 F. Supp. 308, 310–11 (W.D. Va. 1990) (finding it

appropriate for the creditor to pursue both a money judgment and possession of property to satisfy debtor's debt, in part, because the creditor did not abuse their statutory rights or harass the debtor); *Vital Basics, Inc. v. Vertrue Inc.*, 515 F. Supp. 2d 170, 172–73 (D. Me. 2007).

Although Defendants previously brought an action against Plaintiff in state court exercising their right to take possession pursuant to judicial process, *see* Va. Code Ann. § 8.9A-609, that did not prevent them from repossessing the vehicle without judicial process, so long as Defendants did not breach the peace. Moreover, the Court has found no law, nor has Plaintiff offered any, to suggest that the state-imposed stay applied to the Defendants' ability to repossess the vehicle outside of the state judicial proceedings.[8] Defendants dismissed the state court proceedings against Plaintiff after they repossessed the vehicle, therefore there is no evidence that Defendants harassed Plaintiff or abused their statutory rights. *See* Compl. ¶ 19; *Glamorgan Coal Corp.*, 742 F. Supp. at 310–11.

### 3. Plaintiff's "Negotiable Instrument" is No Such Instrument As A Matter of Law And Does Not Invalidate Defendant Stellantis's Right to Repossession

Lastly, the "negotiable instrument,"[9] Compl. Ex. C 54–55, ECF No. 1, provided by Plaintiff to Defendants does not qualify as such an instrument as a matter of law. A negotiable

---

[8] Neither case that Plaintiff cites, *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385 (4th Cir. 2014) or *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487 (4th Cir. 2014) stand for Plaintiff's assertion—that repossession is unlawful when conducted "in defiance of an arbitration stay"—indeed, neither case mentions arbitration or a judicial stay. Resp. Opp'n 17 n.21

[9] Although the parties did not brief the issue, a "negotiable instrument" is defined as:

an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, (iii) a waiver of the

instrument is "an unconditional *promise* or order to pay a fixed amount of money." Va Code Ann. § 8.3A-104(a) (emphasis added). A promise is a "written undertaking *signed* by the person undertaking to pay." Va. Code Ann. § 8.3A-103(9) (emphasis added); *see Daily v. White*, 520 F. Supp. 3d 835, 846 (W.D. Va. 2021); *see also* Va. Code Ann. § 8.3A-401 ("A person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument"). Here, the "negotiable instrument" is not signed by Plaintiff, nor a representative. Therefore, any question that Plaintiff's "negotiable instrument" invalidated the Defendants' right to repossess Plaintiff's vehicle fails because the document provided by Plaintiff is not a negotiable instrument as a matter of law.

**B. The Court Will Decline to Exercise Supplemental Jurisdiction Over Remaining State Law Claims (Counts I, II, III, IV, V, VI, VII, and IX)**

The Court now addresses the remainder of Plaintiff's allegations against Defendants, for which Plaintiff cites no federal basis. Thus, the Court construes them as state law claims.

Federal district courts have supplemental jurisdiction over state law claims when those claims "form part of the same case or controversy" as a federal claim. 28 U.S.C. § 1367(a). Supplemental jurisdiction is not automatic, and district courts may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction is a discretionary doctrine and district courts "enjoy a wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v.*

---

benefit of any law intended for the advantage or protection of an obligor, (iv) a term that specifies the law that governs the promise or order, or (v) an undertaking to resolve in a specified forum a dispute concerning the promise or order.

Va. Code Ann. § 8.3A-104(a).

13

*Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  However, both the Fourth Circuit and the Supreme Court favor dismissing state law claims if the federal claims are extinguished prior to trial.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." (first citing *Gibbs*, 383 U.S. at 726; and then citing *Carnigie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

When determining whether to exercise its discretion to retain jurisdiction, a court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  *Shanaghan*, 58 F.3d at 110.  However, "when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction—'considerations of judicial economy, convenience and fairness to litigants'—are typically absent" and weigh against exercising supplemental jurisdiction.  *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (quoting *Gibbs*, 383 U.S. at 726).

At this juncture, Plaintiff's singular federal claim has been extinguished prior to trial, and the remaining claims rely entirely upon Virginia state law.  Therefore, the aforementioned factors uniformly favor dismissal.  The remaining counts do not directly involve federal policy and are entirely state law claims.  Therefore, allowing a Virginia state court to address state law matters "would best serve judicial economy."  *Thornton v. Piedmont Reg'l Jail Auth.*, 2025 WL 888417, at *12 (E.D. Va. Mar. 21, 2025).  Moreover, this Court has not decided any disputed state law

14

claims or issued a scheduling order in this case. Given that Fourth Circuit precedent "evince[s] a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction," the Court will decline to exercise supplemental jurisdiction and will dismiss the remaining counts without prejudice. *Arrington v. City of Raleigh*, 369 F. App'x 420, 423–24 (4th Cir. 2010); *Thornton*, 2025 WL 888417, at *12; *Johnson v. Exeter Fin. LLC*, 2024 WL 4336615, at *4–5 (E.D. Va. Sept. 27, 2024).

## V. CONCLUSION

For the aforementioned reasons, Plaintiff fails to state a federal claim under the FDCPA against Defendants. Thus, the Court will grant Defendants' Motion to Dismiss as to Count VIII, with prejudice. Further, the Court will exercise its discretion to dismiss the remaining state law claims, Counts I, II, III, IV, V, VI, VII, and IX, without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Date: September 18, 2025
Richmond, Virginia

15